OPINION
{¶ 1} Jason Davidson pleaded guilty as charged to three fifth degree felonies: breaking and entering, possession of criminal tools, and theft. The trial court sentenced Davidson to three consecutive eleven-month sentences for a total sentence of thirtythree months and ordered Davidson to pay restitution. Davidson advances four assignments of error on appeal.
 {¶ 2} "1. The trial court erred in not granting defendant-appellant's request for a continuance of the sentencing hearing."
 {¶ 3} Davidson entered his pleas of guilty February 4, 2004. At that time, the prosecutor stated the position of the State regarding sentencing.
 {¶ 4} "MR. HENDRIX (prosecutor): The agreement indicates that the Defendant is pleading guilty as charged and the State will stand silent as to sentencing. The caveat to that is provided the Defendant gives truthful information to the Beavercreek Police regarding any other individuals who are involved in these offenses, the State will then be willing to recommend community control with treatment in the MonDay Program despite the Defendant's previous record.
 {¶ 5} "And so Detective Brown will be contacting Mr. Davidson in regard to that, so that will be the totality of the agreement between the State and the Defendant and that has been communicated."
 {¶ 6} It appears that Detective Brown did not contact Davidson. Sentencing was scheduled for April 21, and it appears that Davidson's counsel informed him prior to sentencing that the trial court was going to impose a sentence of thirty-three months. Davidson left the courthouse and a capias was issued for his arrest. Davidson was arrested on June 7 and sentencing was scheduled for July 1. On June 30, Davidson's counsel filed a motion "to withdraw guilty plea or, in the alternative, for a continuance to allow for discussion with Beavercreek Police."
 {¶ 7} In arguing that the denial of Davidson's motion for continuance was not an abuse of the trial court's discretion, the State makes much of the fact that Davidson did not contact the Beavercreek police during the over four months between the date he entered his guilty pleas and the final disposition date of July 1. In denying the motion for continuance, the trial court stated:
 {¶ 8} "The Court is not going to grant your request for a continuance of sentencing to allow discussions with the Defendant and the Beavercreek Police Department. The Court makes a specific finding that this was anticipatory prior to the sentencing in this case, that the Defendant will take certain actions. If those actions are satisfactory, then the State would change their recommendation.
 {¶ 9} "Based upon what the State has indicated today, they have not changed their recommendation. The Court will conclude from that that the Defendant has not provided the consideration which was part of that understanding at the time of the plea and that simply has not taken place."
 {¶ 10} More specifically, the trial court stated in denying the motion to withdraw guilty pleas:
 {¶ 11} "The plea agreement has no reflexion that the Police Department or the Prosecutor is required to contact the Defendant regarding this contact, and while the Defendant may very well have made that assumption and had that expectation, that is not any part of the consideration of this case that that had to take place for the purpose of the State changing their recommendation."
 {¶ 12} While the State expresses astonishment that Davidson would neglect to call the Beavercreek police for over four months when so much depended on his doing so, and the trial court recalled nothing obligating the police to contact Davidson, the record of the plea proceeding clearly demonstrates that it was Detective Brown who was to contact Davidson. See quotation of prosecutor's statement, supra.
 {¶ 13} While it may seem remarkable that Davidson or his counsel did not take it upon themselves to contact the police, it is nevertheless clear to us that the trial court was under the mistaken impression that it was up to Davidson to contact the police when, in fact, the opposite was true. It would appear that the State believed that Davidson could provide valuable information to the police, based on its willingness to recommend community control with treatment in the MonDay program. The failure of the police to contact Davidson deprived him of the opportunity to earn this recommendation. A continuance to permit the police to interview Davidson would have corrected the failure of the police to contact Davidson. In our judgment, the trial court acted unreasonably in not continuing sentencing to allow the Beavercreek police to interview Davidson, and Davidson was prejudiced thereby.
 {¶ 14} The first assignment is sustained.
 {¶ 15} "2. The trial court erred in not granting defendant-appellant's motion to withdraw his guilty plea.
 {¶ 16} "3. Defendant-Appellant was not afforded effective assistance of counsel after the plea hearing until and at the sentencing hearing."
 {¶ 17} In evaluating denials of motions to withdraw guilty pleas, we have utilized the considerations enunciated in Statev. Peterseim (1980), 68 Ohio App.2d 211:
 {¶ 18} "A trial court does not abuse its discretion in overruling a motion to withdraw: (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request."
 {¶ 19} Davidson's two principle complaints as to the competence of his counsel are (1) counsel's failure to personally contact the Beavercreek police on his behalf and (2) counsel's less than vigorous advocacy on his motion to withdraw guilty pleas. {¶ 20} As we have noted above, it was the responsibility of the police to contact Davidson, and that failure will be remedied by our disposition of this appeal. As to Davidson's claim of less than vigorous advocacy, counsel did file a written motion to continue sentencing until Davidson spoke to the police and to withdraw Davidson's guilty pleas. In court, in connection with the motion to continue sentencing, counsel did assert his understanding that the police were to contact Davidson.
 {¶ 21} It is true that defense counsel expressed misgivings about the motion to withdraw guilty pleas, but Davidson was hardly prejudiced because the trial court gave him an opportunity to fully explain why he wanted to withdraw his guilty pleas. That Davidson was prejudiced by his counsel's performance during the hearing on the motion is purely speculative.
 {¶ 22} Davidson also claims that his counsel misstated his position: that he thought the thirty-three month sentence was inappropriate whereas his position was really that the police had not contacted him. In fact, Davidson testified on both of these points.
 {¶ 23} Finally, Davidson claims that his counsel should have moved to continue the motion to withdraw guilty pleas until Detective Brown was available to testify, as the prosecutor had suggested. It appears from the record, however, that the trial court wanted to conduct the motion hearing at that time notwithstanding the prosecutor's suggestion.
 {¶ 24} We note that the focus of the first Peterseim
consideration seems to be on the competence of counsel up until the time the plea is entered, i.e., the competence of counsel in negotiating the plea itself, rather than the skill of counsel in effecting its subsequent withdrawal. See Peterseim at p. 214. Davidson makes no complaint about his counsel's negotiation of his guilty pleas.
 {¶ 25} Davidson concedes that the second Peterseim
consideration is satisfied.
 {¶ 26} Davidson claims he was not given a complete and impartial hearing because Detective Brown was not present, as the prosecutor suggested he should be.
 {¶ 27} It appears from the record that the trial court mistakenly believed the police were not obliged to contact Davidson. It is clear that at the time of sentencing there had been no contact between the police and Davidson. It cannot be known from this record what Detective Brown might have testified to, and whether it would have been helpful to Davidson.
 {¶ 28} Davidson was given a chance to state his reasons for wanting to withdraw his guilty pleas. Essentially, he thought he was tricked into pleading guilty, thinking he would get six months in the MonDay program, while, in fact, he was getting a thirtythree month sentence. He said "part of" his being tricked was not being contacted by Detective Brown.
 {¶ 29} In our judgment, the third Peterseim consideration was satisfied.
 {¶ 30} Moving to the fourth Peterseim consideration, the trial court — reflecting upon the Rule 11 colloquy with which Davidson has no complaint — found that it had clearly explained that the State's recommendations were just that, i.e., not binding on the court. The record of the plea hearing reflects Davidson's understanding of the nonbinding nature of recommendations and the full extent of the court's sentencing authority. As such, we find the fourth Peterseim consideration satisfied. We have stated that, generally, a defendant is not allowed to withdraw a guilty plea prior to sentencing just because he is made aware that a subjectively unexpected sentence is going to be imposed. State v. Uribe (Mar. 5, 1999), Montgomery App. No. 17044. This is the situation presented here.
 {¶ 31} Assignments II and III have no independent vitality and they are overruled.
 {¶ 32} Pursuant to our disposition of the first assignment, the sentence will be vacated, and the matter will be remanded for resentencing after Davidson has been interviewed by the Beavercreek police.
 {¶ 33} If Davidson provides information of such a quality that, if provided prior to April 21, would have resulted in the State's recommendation of community control with participation in the MonDay Program, the State shall make that recommendation.
 {¶ 34} If Davidson provides information of such quality but which, because of the passage of time, has lost its usefulness to the Beavercreek Police, then Davidson should be permitted to withdraw his guilty pleas. See Santabello v. New York (1971),404 U.S. 257.
 {¶ 35} If it appears that Davidson would or could never have provided information of such quality, the court may reimpose the original sentence.
 {¶ 36} "4. The trial court erred failed [SIC] to make the required findings when sentencing defendant-appellant."
 {¶ 37} Although this assignment asserts that the trial court failed to make required findings, the argument in support of the assignment is confined to a contention that the court failed to state its reasons for finding as it did.
 {¶ 38} In imposing greater than minimum sentences, the trial court made both of the findings contemplated at R.C.2929.14(B)(2). There is no requirement that the court state its reasons for these findings. See State v. Watters (Apr. 15, 2005), Champaign App. No. 2004 CA 9. The trial court also found Davidson had served a prison term. R.C. 2929.14(B)(1). This fact need not be found on the record. State v. Johnson (Feb. 4, 2005), Montgomery App. No. 20469.
 {¶ 39} In imposing consecutive sentences, the trial court made the findings required by R.C. 2929.14(E)(4)(c). Although Davidson asserts generally that the court failed to state its reasons for finding as it did, he fails to specify how the court was deficient. The trial court's statements of findings and reasons covered seven pages of transcript of the sentencing hearing. The trial court stated that the most significant reason for consecutive sentences was Davidson's lengthy criminal record, both as a juvenile and as an adult. Itemizing Davidson's prior offenses and dispositions alone consumed more than two pages of transcript, after which the court stated in part:
 {¶ 40} "Before I move on I will simply say this is one of the most abysmal records I've ever seen anyone have, Mr. Davidson, and I've got to be very candid with you to say that that is one of the most significant factors this Court takes into consideration when it comes to whether or not the Court finds that the person is likely to commit further crimes in the future.
 {¶ 41} "You have throughout virtually your entire life been in and out of the Court. You've been in and out of the Juvenile System, the prison system. I don't [sic] why you choose to do that. I think you probably have a handle on that.
 {¶ 42} "The PSI goes on to describe the nature of this offense, and your statement of the version of the offense and very candidly, once again, your phrase that you smoked up the rest of the drugs like a junky is probably a fair statement as to where you are in your life, and you committed this offense or participated in this offense just so you could get high for a while, which the Court finds there's absolutely no indication for the reasons for committing these offenses and finds no justification for you doing so.
 {¶ 43} "While the Court has considered these matters, as well as the other facts regarding this particular offense in this particular case, the Court finds that consecutive sentences are necessary to protect the public from future crime by this Defendant by the fact that the Defendant's prior history is a continuous one and that consecutive sentences are necessary and not disproportionate to the seriousness of the Defendant's conduct and to the danger the Defendant poses to the public.
 {¶ 44} "By virtue of the facts that the Court has particularly stated, and the reasons, I make these findings from the Defendant's prior history and the nature of that prior history.
 {¶ 45} "The Court further finds that these offenses were committed while the Defendant was under community control sanctions and that the Defendant's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by this Defendant.
 {¶ 46} "And I will finally close my findings and remarks with the fact that if the Court had any doubt as to the likelihood of your willingness to commit future crimes, on April 21st, 2004, when you were here for sentencing previously, you were advised by your Counsel as to what the recommendation was in this case. You had not been sentenced by this Court. Your Counsel had not discussed with the Court, maybe you had discussed with your Counsel the circumstances of this case, but it was your choice to voluntarily leave this Courthouse and flee your required attendance at this hearing.
 {¶ 47} "If there was any doubt in this Court's mind of your willingness to violate the authority of the Court and to ignore the requirements of what your obligations are to society, that pretty much closed the door as to that particular fact. And so I take that into consideration in making the determination that consecutive sentences are appropriate for the reasons and findings that I've stated by a preponderance of the evidence at this time."
 {¶ 48} In our judgment, this was a sufficient statement of reasons, as required by R.C. 2929.19(B)(2)(c).
 {¶ 49} The fourth assignment of error is overruled.
 {¶ 50} Pursuant to our disposition of the first assignment of error, the sentence will be reversed, and the matter will be remanded for resentencing in accordance with this opinion.
Brogan, P.J. and Donovan, J., concur.