OPINION
{¶ 1} Charles S. Davis, Jr., defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court found him guilty, pursuant to a plea of guilty, of kidnapping, in violation of R.C. 2905.01, a first-degree felony; gross sexual imposition, in violation of R.C. 2907.05, a fourth-degree felony; felonious assault, in violation of R.C. 2903.11, a second-degree felony; and seven counts of rape, in violation of R.C. 2907.02, first-degree felonies. *Page 2 
 {¶ 2} On January 21, 2006, the 15-year-old victim, "M.M.," was on her way to school when she met appellant, who was 32 years old. Appellant displayed a sharp object and dragged M.M. with him. He took M.M. to several different locations in Columbus, Ohio, including a BP gas station, where a videotape surveillance camera recorded their activities. The videotape, at times, showed the victim alone in the store, and the store clerk was present throughout. The two eventually arrived at a garage, where appellant forced M.M. to engage in vaginal intercourse. Appellant then took M.M. to the laundry room at an apartment complex, where he forced M.M. to engage in vaginal intercourse, digital anal contact, and anal intercourse. The next morning, appellant left M.M. on a street, at which point she called a family member.
 {¶ 3} On February 2, 2006, appellant was indicted on one count of kidnapping with a sexual motivation specification, one count of felonious assault with a sexual motivation specification, seven counts of rape with a sexually violent predator specification, and one count of gross sexual imposition. A trial was scheduled for August 2006, but a continuance was granted for appellant to consider a plea. Appellant eventually refused the plea and requested his trial attorney, Phil Churchill, be removed, which the trial court denied.
 {¶ 4} After voir dire, a jury trial commenced on October 30, 2006. The next day, appellant indicated that he wished to enter a guilty plea without the sexually violent predator specifications. The trial court accepted the guilty plea, and sentencing was set for December 15, 2006. At the time of the sentencing hearing, appellant's counsel was in the hospital. Based upon a letter appellant wrote to the trial court, indicating that appellant wished to withdraw his guilty plea and desired a new attorney, the trial court appointed *Page 3 
new counsel. Appellant's new trial counsel indicated to the trial court at several hearings that she was determining whether appellant still desired to withdraw his guilty plea. On the day prior to the sentencing hearing, appellant's counsel informed the trial court that appellant wished to withdraw his guilty plea.
 {¶ 5} On March 30, 2007, the trial court held a hearing on appellant's motion to withdraw his guilty plea. At the hearing, appellant testified that his defense counsel had told him that a videotape from a BP gas station ("BP videotape") showing appellant and M.M. was not viewable, and he was never shown the video. Appellant further complained that he was not aware that he faced a potential life sentence until the original trial date, there were witnesses for which his attorney refused to search, he had not liked the gender composition of the jury, his trial counsel told him he was pleading to four counts of rape instead of seven counts, his trial counsel had told him that it was not possible to file a motion to view the scene of the crime, he pled guilty merely to "get along," his trial counsel failed to show him a videotape from an Urban League meeting that gave him an alibi, and he did not understand anything the court asked him during the original plea hearing. Appellant's original trial counsel, Churchill, also testified at the hearing, contradicting much of appellant's testimony. The trial court denied appellant's motion to withdraw his guilty plea.
 {¶ 6} A sentencing hearing was held following the hearing on appellant's motion to withdraw his guilty plea. On June 7, 2007, the trial court entered judgment, finding appellant to be a sexual predator and sentencing appellant to six years on the kidnapping count, two years on the felonious assault count, and six years on each of the seven counts of rape, which were all to be served consecutively, and 12 months on the gross *Page 4 
sexual imposition count, which was to be served concurrently, for a total of 50 years incarceration. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
 [I.] A CRIMINAL DEFENDANT RECEIVES INEFFECTIVE ASSISTANCE OF COUNSEL WHERE HIS ATTORNEY FAILS TO DISCLOSE CRITICAL EVIDENCE PRIOR TO THE ENTERING OF A GUILTY PLEA.
 [II] A CRIMINAL DEFENDANT'S CONSTITUTIONAL RIGHTS TO A FAIR TRIAL ARE DENIED WHEN HIS DEFENSE ATTORNEY CONVEYS ERRONEOUS INFORMATION TO HIM.
 [III] A TRIAL COURT ABUSES ITS DISCRETION WHEN IT REFUSES TO ALLOW A CRIMINAL DEFENDANT TO WITHDRAW HIS GUILTY PLEA PRIOR TO SENTENCING.
 {¶ 7} We will address appellant's first and second assignments of error together, as they are related. Appellant argues in his first assignment of error that he received ineffective assistance of counsel when his attorney failed to disclose critical evidence prior to the entering of his guilty plea. Appellant argues in his second assignment of error that he was denied a fair trial when his attorney told him he could not get a jury view and did not inform him that he was facing a life sentence. The standard for determining whether a trial attorney was ineffective requires appellant to show: (1) that the trial attorney made errors so egregious that the trial attorney was not functioning as the "counsel" guaranteed appellant under the Sixth Amendment, and (2) that the deficient performance prejudiced appellant's defense. Strickland v.Washington (1984), 466 U.S. 668, 686-687, 104 S.Ct. 2052. Essentially, appellant must show that the proceedings, due to his attorney's ineffectiveness, were so unfair that there is a reasonable probability that the result would have been different absent his attorney's deficient performance. Id., *Page 5 
at 693. Furthermore, a court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" in reviewing a claim of ineffective assistance of counsel. Id., at 689. In Ohio, a properly licensed attorney is presumed to execute his or her duties in an ethical and competent manner. State v. Hamblin (1988), 37 Ohio St.3d 153, 155-156. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. State v. Phillips (1995),74 Ohio St.3d 72, 85. Reviewing courts must not use hindsight to second-guess trial strategy, and must bear in mind that different trial counsel will often defend the same case in different manners.Strickland, at 689; State v. Keenan (1998), 81 Ohio St.3d 133, 152.
 {¶ 8} In the present case, appellant argues that his counsel was ineffective and his constitutional rights to a fair trial were violated when his counsel neglected to show him the BP videotape to allow him an opportunity to identify potential witnesses, failed to inform him that he faced life imprisonment until late in the proceedings, misrepresented that a jury view of the scene was not possible, and conveyed to him that the BP videotape was not viewable. Appellant claims that, but for his trial counsel's acts, he would have continued with his jury trial and not pled guilty.
 {¶ 9} After reviewing the record, we find appellant's trial counsel was not ineffective, and appellant was not denied a fair trial based upon his trial counsel's actions. Initially, we must determine whether appellant's trial counsel made errors so egregious that the trial attorney was not functioning as "counsel." We do not find so. In this case, we have the benefit of the sworn testimony of appellant and his trial counsel, as well as appellant's mother, from the hearing on appellant's motion to withdraw his guilty plea. *Page 6 
With regard to the fact that Churchill did not show appellant the BP videotape prior to his jury trial, appellant complains that he would have been able to identify potential witnesses on the videotape to assist his trial. However, the record demonstrates that his failure to show appellant the BP videotape was not so egregious that he did not function as counsel. Appellant admitted that Churchill told him about the BP videotape on his second visit in March 2006, but Churchill told him the tape was not viewable. It is undisputed that the videotape was, in fact, not viewable until late September or early October, when its multi-view format was reformatted into VHS by the state crime lab. Regardless, appellant admitted he could not give his replacement counsel any more information about witnesses than he gave his prior counsel. Although appellant did claim that, once he saw the videotape, he recognized a potential witness on the tape, he did not know the person's name or address. Further, despite appellant's testimony that he could have determined names and leads from the BP videotape if given time, his claim is dubious, as there was no indication that he was able to generate any names or addresses in the time between viewing the video and the hearing on his motion to withdraw his guilty plea. It is also important to note that appellant admitted that the only information the witness from the BP station would have added was that he was going to give appellant some shoes and a ride, the minimal value of which would have negated any prejudicial impact.
 {¶ 10} Significantly, Churchill testified that once he received the reformatted BP videotape in late September or early October 2006, he told appellant what was on the tape, that he believed it was helpful, and that he was going to use the tape at trial. He testified that appellant, in fact, told him about other potential witnesses, but the problem was that they could not be identified. Churchill stated he never showed appellant the BP *Page 7 
videotape because he received the reformatted tape so late in the proceedings, and the logistics of trying to show appellant the tape at prison were difficult. Instead, Churchill stated he explained the contents of the videotape to appellant and how he intended to use the tape at trial. He also stated he saw no use in having appellant view the BP videotape because appellant knew no identities of any of the people in the store. In light of Churchill's explanation of his tactics, we find Churchill's decisions and performance in handling the videotape were reasonable.
 {¶ 11} Appellant next asserts that his trial counsel was ineffective when he failed to inform him that he faced life imprisonment until late in the proceedings. Specifically, appellant claims that, although Churchill told appellant's mother at the August 28, 2006 hearing that he faced a life sentence, Churchill did not tell him he faced a life sentence until the time of voir dire at the end of the October 2006 trial. He claims that, on August 28, 2006, his counsel only told him that he was in some "deep shit." However, appellant's claim that such constituted ineffective assistance presupposes that Churchill, in fact, failed to inform him of the potential penalties until the trial commenced. To the contrary, Churchill testified several times that he informed appellant of the life specification during his first meeting with him in jail. The trial court specifically found appellant not credible based upon numerous inconsistencies between his actions and testimony. The trial court was in the best position to view the witnesses, and we have no reason to disturb its credibility determinations. Further, although Churchill admitted that he did not tell appellant's mother about the life specification until the August 2006 hearing, such is immaterial as to when he informed appellant. Therefore, based upon Churchill's testimony, we find Churchill's representation, in this respect, was not ineffective. *Page 8 
 {¶ 12} Appellant also claims his trial attorney was ineffective when he misrepresented that a jury view of the crime scenes was not possible. However, appellant's contention again presupposes that his trial attorney, in fact, told him that a jury view was not possible. At the hearing on appellant's motion to withdraw his guilty plea, Churchill specifically testified he did not recall ever having a discussion with appellant about a jury view or the distances between the various sites relevant to the incident. Notwithstanding, even if we were to believe appellant and not Churchill, we find that any prejudicial impact would be highly and impermissibly speculative. See, e.g., State v.Davidson, Greene App. No. 2004 CA 78, 2005-Ohio-2762, at ¶ 21 (that defendant was prejudiced by his counsel's performance was purely speculative). Churchill testified that a jury view would have been hurtful to appellant's case. Although we understand appellant's assertion that a jury view of the various locations the victim claimed to have been raped and under appellant's control could have arguably helped the jury better understand that the distances between the locations were too far to believe that appellant could control the victim for so long, we also find compelling Churchill's view that a jury view would have not been good trial strategy. The rapes occurred in an abandoned garage and then in the laundry room of a relatively abandoned apartment complex. Showing the jurors the various locations might have served only to reinforce with the jurors the remoteness of the locations of the rapes, thereby demonstrating to the jury that the rapes could have occurred without detection. We also note that any prejudicial impact was minimal because there existed other equivalent methods by which appellant's counsel could have helped the jury understand the distances between the various locations. Therefore, we find this argument without merit. *Page 9 
 {¶ 13} Appellant also raises the fact that Churchill had never tried a rape case, and he felt Churchill was pressuring him to accept the plea deal so that Churchill would not have to try the case. While Churchill admitted he had never tried a rape case, he also stated he has been defense counsel on at least 10 to 20 rape cases. He also had 26 years of experience as a criminal defense attorney. Churchill testified he viewed the case as he would any other criminal case. Regardless of the charge, Churchill testified, the issue is to create a theory of defense and try his best to get a jury to believe it and find the state failed to meet its burden. He denied that his inexperience in trying rape cases had anything to do with why he tried to convince appellant to plead guilty. Churchill admitted he "begged" appellant to accept a plea bargain, but he indicated he did so based upon the nine females on the impaneled jury and the life specification facing appellant. He was also concerned that, because of appellant's prior criminal behavior and because he was on parole at the time of the instant offenses, the parole authority was not likely to release him early if convicted of any of the crimes, and he would die in prison. Although appellant's mother, Joellen Thacker, testified that she thought she was being "used" to convince her son to plead guilty, Churchill stated he told Thacker that appellant should plead guilty for the same reasons. With regard to Churchill's experience, the trial court found:
 Mr. Churchill's been a lawyer in the County and Municipal Court system here for going on 30 years. He has handled countless cases. He's tried any number of jury trials. The Court is factoring in that he has not tried a rape to a jury. However, a trial is a trial. The State needs to prove certain elements, and the defense needs to figure out where the weak spots are and attack those weak spots.
 * * * *Page 10 
 I find that Mr. Churchill is highly competent. He's appeared before this Court numerous times. I tried cases against Mr. Churchill before I became a judge.
We have no reason to question the trial court's findings in this respect, and we can find no inference that Churchill "pressured" appellant to plead guilty based upon anything other than the facts of the case and the particular circumstances facing appellant. "It may be assumed that all defendants faced with a criminal trial, the risk of convictions on multiple counts and longer sentences are `under pressure' or feel the coercion of the justice system. But, that cannot be reason enough to allow withdrawal of the plea." State v. Abdelhag (July 31, 1997), Cuyahoga App. No. 71136. Therefore, we find appellant's trial counsel was not ineffective merely based upon his inexperience in trying rape cases.
 {¶ 14} Accordingly, based upon the record before us, we find appellant's trial attorney did not make errors so egregious that he was not functioning as the "counsel" guaranteed appellant under the Sixth Amendment, and appellant was not denied a fair trial. Appellant's first and second assignments of error are overruled.
 {¶ 15} Appellant argues in his third assignment of error that the trial court abused its discretion when it denied his motion to withdraw his guilty plea. Motions to withdraw guilty pleas prior to sentencing are to be freely and liberally allowed. State v. Peterseim (1980), 68 Ohio App.2d 211, 214. However, the right to withdraw a guilty plea prior to sentencing is not absolute. State v. Xie (1992), 62 Ohio St.3d 521. Before ruling on a pre-sentence motion to withdraw a guilty plea, the trial court must hold a hearing to determine whether there is a reasonable and legitimate basis to allow the withdrawal. Id., at 527. The decision to grant or deny a motion to withdraw a guilty plea is within the sound discretion of the trial court. Id. It must be emphasized that abuse of discretion *Page 11 
connotes more than a simple error of law or judgment; it implies that the trial court's decision is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 16} There are numerous factors that should be weighed in considering a pre-sentence motion to withdraw a guilty plea. State v.Fish (1995), 104 Ohio App.3d 236, 240. Specifically, a trial court does not abuse its discretion in denying a motion to withdraw a guilty plea where: (1) highly competent counsel represented the defendant; (2) the trial court conducted a full hearing, pursuant to Crim.R. 11, before the defendant entered the guilty plea; (3) the trial court conducted a complete and impartial hearing on the plea withdrawal motion; and (4) the trial court gave full and fair consideration to the plea withdrawal request. Peterseim, paragraph three of the syllabus. Additional factors include whether: (1) the trial court would prejudice appellee by granting the plea withdrawal; (2) the defendant made the plea withdrawal motion within a reasonable time; (3) the motion sets out specific reasons for the withdrawal; (4) the defendant understood the nature of the charges and possible penalties; and (5) the defendant was perhaps not guilty of or had a complete defense to the charge or charges.Fish, at 240. However, the above list is not exhaustive, and other factors will appear to trial and appellate courts depending upon the merits of each individual case. Id.
 {¶ 17} In the present case, the trial court, in a lengthy and thorough oral decision, addressed the pertinent factors identified above in denying appellant's motion to withdraw his guilty plea. In his third assignment of error, appellant presents several specific arguments, all but one of which we have already addressed in determining appellant's first and second assignments of error. Appellant contends that he asserted a reasonable *Page 12 
and legitimate basis for the withdrawal of his plea, in that he could identify potential witnesses in the BP videotape that could have resulted in additional exculpatory evidence; his trial counsel gave him erroneous information about the jury view; his trial counsel erroneously told him that the BP videotape was not viewable; his trial counsel failed to tell him he faced a life sentence; his trial counsel begged him to accept a plea deal; and his trial counsel was inexperienced with rape jury trials. As we have addressed these arguments already and found them to be without merit, we will not restate the same reasoning here and conclude that these arguments do not provide a reasonable and legitimate basis to allow the withdrawal.
 {¶ 18} Appellant does, however, raise the additional assertion that his trial counsel erroneously told him that he was pleading guilty to four rape charges when he actually pled guilty to seven rape charges. However, the record does not support appellant's claim. Appellant signed a two-page entry of guilty plea on October 31, 2006. Churchill testified that it was his practice and procedure to lay the form on the ledge of the holding cell, ask the client to read along with him line-by-line, and read the form verbatim to the client, while advising the client of the exact charges, exactly what he is pleading to, and the exact consequences of the plea. Churchill also testified that, after explaining the plea form to the client, he asks whether the client has any questions and tells him he may stop the plea hearing if any questions arise at that time. He stated that he remembered specifically explaining to appellant all of the above. He believed appellant knew what he was doing, that appellant was advised of and understood his rights, and that appellant understood the dialogue of the judge. Although appellant claimed to have bad eyesight *Page 13 
and implied this affected his reading of the plea form, Churchill stated he was not aware of any eyesight problems.
 {¶ 19} In its well-reasoned oral decision, the trial court touched on this issue. The trial court noted that it asked appellant numerous questions at the time he entered his guilty plea as to whether he understood his plea, and appellant told the court that he understood. The trial court specifically found appellant not to be credible when he testified at the hearing on his motion to withdraw his guilty plea that he felt he "had to" tell the court he understood his plea just "to get along." Contrary to appellant's contention, the trial court found that hundreds of defendants have answered the court's questions at plea hearings with a simple "yes, sir" and "no, sir," and the court cannot assume that these defendants actually wanted to tell the court something else.
 {¶ 20} Our own review of the plea hearing fails to indicate that appellant's plea was anything but knowing and voluntary. The state specifically stated at the commencement of the hearing that appellant had agreed to plead guilty to, among other charges, "Counts Four through Ten[,] which are each rape[.]" The trial court then told appellant that, if he did not understand, he should let the court know so they could talk until he understood. The court then reiterated that he had pled guilty to "Counts Four through Ten" and that they were "separate counts of rape." The court also had a dialogue as to appellant's understanding of the plea form and to what he was specifically pleading guilty. Appellant indicated he understood the plea form and the rights he was giving up. We further note that the record indicates that appellant had pled guilty to 13 prior offenses, and, as such, appellant was familiar with plea agreements and plea hearings. The trial court also specifically asked appellant if he understood he was pleading guilty to seven counts of *Page 14 
rape, and appellant answered in the affirmative. Thus, we find this argument without merit.
 {¶ 21} Although appellant does not specifically contest, to any great degree, the individual factors enunciated in Peterseim andFish, supra, we find these factors do not, on balance, support the granting of appellant's motion to withdraw his guilty plea. The record demonstrates that appellant's trial counsel was highly competent; the trial court conducted a full hearing, pursuant to Crim.R. 11, before appellant entered the guilty plea; the trial court conducted a complete and impartial hearing on the plea withdrawal motion; the trial court gave full and fair consideration to the plea withdrawal request; and appellant understood the nature of the charges and possible penalties. Although we agree with the trial court that appellant filed his motion to withdraw in a fairly timely manner and that appellant's motion set out specific reasons for the withdrawal, albeit somewhat different from the reasons later raised, neither of these factors lend significant weight to granting the motion.
 {¶ 22} We also agree with the trial court's observations as to whether appellant might have had a complete defense to the charges, in that consent would have been a very difficult defense to the crimes, given the age difference between appellant and the victim; appellant and the victim were strangers; the rapes occurred in several abandoned areas; the victim sustained cuts and bruises; the victim had vaginal trauma; and appellant had prior convictions, including rape, that would have likely precluded his testifying on his own behalf. Although it is possible the BP videotape could have suggested to a jury that the victim was under no duress or compulsion at the time of surveillance, we cannot say such rises to the level of showing that appellant was, perhaps, not guilty or provided a *Page 15 
complete defense to the charges, given the abundance of other evidence tending to demonstrate appellant's guilt. Thus, when considered in totality, we do not find the factors in Peterseim and Fish, supra, support the granting of appellant's motion to withdraw his guilty plea. For the foregoing reasons, we find the trial court did not abuse its discretion when it denied appellant's motion to withdraw his guilty plea. Appellant's third assignment of error is overruled.
 {¶ 23} Accordingly, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 KLATT and FRENCH, JJ., concur. *Page 1